Argued November 15, decided November 20, 1913.

## SALEM HOSPITAL v. OLCOTT.

(136 Pac. 341.)

**Statutes—Construction—Time of Taking Effect—Referendum—Workmen's Compensation Act.**

1. "June 30th next following the taking effect of this act," within act of February 25, 1913, Chapter 112, the "Workmen's Compensation Act," Section 12, providing that "every workman subject to this act * * who, after June 30th next, following the taking effect of this act * * sustains personal injury * * resulting in his disability," shall be entitled to receive certain sums from the industrial accident fund created by the act, is June 30, 1914, so that authority of the commission, under Section 23, to provide hospital accommodations to workmen "who are entitled to benefits hereunder" does not apply to workmen injured before that time; the act having been approved at a referendum election held November 4, 1913, under Article IV, Section 1, of the Constitution, providing that "any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise."

**Master and Servant—Workmen's Compensation Act—Claims—Auditing.**

2. No workmen injured before June 30, 1914, being entitled to benefits under act of February 25, 1913, Chapter 112, the "Workmen's Compensation Act," and the commission being authorized, by Section 23, to provide hospital accommodations only for injured workmen "who are entitled to benefits hereunder," the Secretary of State properly refuses to audit the claim of a hospital for the sum the commission has contracted to pay it for hospital accommodations during December, 1913, for workmen entitled to benefits under such law, it being impossible that there can be such workmen.

[As to who is "workman" within meaning of workmen's compensation act, see note in Ann. Cas. 1913C, 28. As to who is "dependent" within such act, see note in Ann. Cas. 1913E, 480; and as to what is an accident within meaning of such act, see note in Ann. Cas. 1913C, 4.]

En Banc.   Original petition for *mandamus.*

This is an original *mandamus* proceeding by the Salem Hospital, a corporation, against Ben W. Olcott, Secretary of State.

The alternative writ of *mandamus* proceeding in this court recites the corporate character of the plaintiff, the appointment and organization of the State Industrial Accident Commission, together with the

adoption by that body of rules and regulations for first aid to workmen entitled to allowances from the industrial accident fund. It then states, in substance, that the commission anticipated that personal injuries would happen to workmen during the month of December, 1913, and, with that in view, contracted with the plaintiff for hospital accommodations for that month to be rendered to workmen entitled to benefits under the law establishing the commission, the consideration for which was to be $180, of which $25 was to be paid on or before November 13, 1913. The writ further avers readiness and ability of the petitioner to perform the contract; that there were funds in the state treasury applicable to the payment of the claim; that the commission presented a voucher to the defendant, Secretary of State, with the request that he audit and approve the claim and draw his warrant on the state treasurer in payment of the same; and that the defendant has refused to audit the claim or draw his warrant as requested. The writ commands the defendant to audit and approve the claim and draw his warrant on the treasurer, payable out of the industrial accident fund, or to show cause why he has not done so. The defendant has demurred to the writ.

DISMISSED.

*Mr. Andrew M. Crawford,* Attorney General, for the defendant.

*Mr. James B. Kerr, amicus curiae.*

*Mr. Claude C. McColloch,* for the plaintiff.

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. The act of February 25, 1913, passed by the legislative assembly at its twenty-seventh biennial ses-

sion, being Chapter 112 of the Laws of 1913, commonly known as the "Workmen's Compensation Act," was referred to the people by petition under the sanction of Article IV, Section 1, of the state Constitution, establishing the referendum as a final step in the process of legislation. The act mentioned was approved at the election held throughout the state, November 4, 1913. The section of the Constitution mentioned contains this declaration of the will of the people: "Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise." In view of this plain, mandatory language it is manifest that the act in question did not go into effect at least until immediately after the election, although Section 3479, L. O. L., requires the governor to proclaim the result of the canvass of votes and to declare approved measures to be laws from the date of his proclamation. Section 12 of the act says that "every workman subject to this act while employed by an employer subject to this act, who, after June 30th next following the taking effect of this act, while so employed sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability" shall be entitled to receive certain specified sums from the industrial accident fund created by the act. Section 23 declares that "the commission shall have authority to provide, under uniform rules and regulations, first aid to workmen who are entitled to benefits hereunder, together with transportation, medical and surgical attendance and hospital accommodations for injured workmen at an expense not exceeding two hundred and fifty dollars in any one case, and to contract therefor in its discretion." The act took effect, as already stated, not prior to November 4, 1913, the date of the election at

which it was approved by the people. "June 30th next following the taking effect of this act" cannot mean anything else than June 30, 1914. It is only the workman who sustains personal injury after this last-mentioned date and is otherwise qualified that is entitled to the benefits of the act, and it is only for such workmen that the commission is authorized to provide hospital accommodations under Section 23 of the act. Until after June 30, 1914, there cannot be anyone who may enjoy the bounty of the statute. It is axiomatic that no disbursing officer can lawfully apply the public funds to objects not authorized by law, and the Secretary of State, as public auditor under Article VI of Section 2 of the Constitution, is well within his duty and authority when he refuses to audit or draw his warrant on the treasurer in payment of the claim in question; it being for hospital accommodations in advance for individuals, impossible under the law, at a time when such benefits cannot be lawfully conferred: *Boyd* v. *Dunbar,* 44 Or. 380 (75 Pac. 695); *Calbreath* v. *Dunbar,* 46 Or. 580 (81 Pac. 366).

Much was said at the hearing about the intent of the legislative assembly as a canon of construction. It was urged that as the act, but for the referendum, would have taken effect on June 3, 1913, that being 90 days after the close of the session on March 4th of that year, the legislature meant June 30, 1913, when it said "June 30th next following the taking effect of this act," which, being interpreted, signifies 27 days after the law became effective. Computation, however, is not necessarily interpretation. Legislative intent, also, is controlled by the Constitution, that being the paramount expression of the authority of the people. The legislature could have said "twenty-seven days after the taking effect of this act," but it did not. It chose to insert in the statute a certain calendar date occur-

ring next after the law came into force, to wit, June 30th. That does not mean December 1st, as contended at the hearing, and we cannot give it that signification without acting as legislators, a function forbidden to us by the fundamental law. So far as intent of the legislature is concerned, that body must be presumed conclusively to have acted with direct reference to the possibilities of the referendum so plainly written in the Constitution. The argument of counsel could have been used with probable effect when the bill for this act was under consideration before the legislative assembly to procure an amendment eliminating the fixed date, and providing for a certain number of days after the act should take effect; but, controlled as we are by the direct mandate of the people that a referred act shall take effect only after their approval and not otherwise, we cannot yield to that reasoning.

The demurrer to the writ is sustained and the proceeding dismissed.                                      DISMISSED.

MR. JUSTICE MOORE and MR. JUSTICE EAKIN did not sit.