THE STATE EX REL. LORA ELSAS V. MISSOURI WORKMEN'S COMPENSA-
TION COMMISSION, ALROY S. PHILLIPS ET AL., Members.—2 S.
W. (2d) 796.

Court en Banc, February 4, 1928.

*Cleary & Barnett* and *Denton Dunn* for relator.

*North T. Gentry*, Attorney-General, *L. Cunningham,* Assistant Attorney-General, and *T. H. Antrobus,* Special Assistant Attorney-General, for the State.

*Lathrop, Morrow, Fox & Moore,* for Montgomery Elevator Company, *amicus curiae.*

GRAVES, J.—There are two cases in our docket involving the question as to when the Workmen's Compensation Act became effective. Both have been assigned to the writer. The other case is "The State of Missouri at the relation of Louis Lickenstein, Relator, v. Missouri Workmen's Compensation Commission, Alroy S. Phillips, Chairman, Evert Richardson, member, and Orin H. Shaw, member of Missouri Workmen's Compensation Commission, Respondents," and is our No. 28236.

We select the instant case (No. 28380) for the principal opinion, because the question therein is broader than in the other case. The two cases were argued and submitted at the same time. In the instant case there is a motion for judgment on the pleadings in this language:

"Now comes the relator herein and intending hereby to admit the facts pleaded in the respondents' return, but not to admit the conclusions of law therein, particularly as the same appear in the next to the last paragraph of said return, moves the court for judgment upon the pleadings herein filed and prays the court that she be granted relief as prayed in her petition herein."

There is no substantial difference between the several statements in this case. We have three of them, i. e., one by relator, one by the Attorney-General for the Commission, and one by counsel for Montgomery Elevator Company, *Amicus Curiae.*

Relator has gleaned from the pleadings the facts, and thus states them:

"This is a direct proceeding in mandamus to require the Missouri Workmen's Compensation Commission to assume jurisdiction over a compensation claim growing out of injuries received November 4, 1926. The facts involved are for the purpose of this hearing conceded by both sides and the question to be answered is what is the legal effect of those facts.

"On November 4, 1926, Marshall Elsas, the husband of relator, was in the employ of the Montgomery Elevator Company, an Illinois corporation, having an office in Kansas City, Missouri, where it employed and had employed for several years more than ten employees, including said Elsas. On that day while helping to install an elevator in the regular course of his employment in the three-story building of the Missouri Casket Company in Kansas City, Missouri, the ladder upon which he was working gave way and precipitated him down the elevator shaft from the third floor of said building to the bottom of the shaft. On November 24, 1926, as a result of the injuries received in said fall he died, leaving, as his dependents, relator herein and three minor children.

"Marshall Elsas's average wage for the year preceding his death was the sum of $65 per week. Neither he nor his employer had at any time elected not to come under the Compensation Act.

"Immediate notice was given to the employer, Montgomery Elevator Company, of said accident, and that company and its insurer, the American Mutual Liability Company, 543 Lathrop Building, Kansas City, Missouri, had at the time actual notice of said accident and of the death of Marshall Elsas resulting therefrom, and on April 19, 1927, either paid or caused to be paid the hospital bills and other medical expenses of said Marshall Elsas incurred by reason of said injury.

"On the eighth day of July, 1927, relator filed with the respondent, the Missouri Workmen's Compensation Commission, an employee's report of the accident, a notice of disagreement with the employer and a claim for compensation in the sum of $13,150, in due form and upon blanks provided by the Commission. Relator at said time requested the respondents to assume jurisdiction over the controversy between herself and said employer, Montgomery Elevator Company, concerning the compensation due her under the Compensation Act. Respondents, however, under date of July 9, 1927, in writing, refused to assume jurisdiction, stating their reason for such refusal as follows: 'The Commission, of course, refused to assume jurisdiction over the case in view of the fact that the law did not go into effect until November 16, 1926, the date a proclamation was issued by the Governor, and also from the fact that the liability sections of the law did not become effective until January 9, 1927.'

"Thereafter, on September 1, 1927, relator filed in this court her petition for a writ of mandamus against said respondents to require them to assume jurisdiction of her said claim and the controversy existed between herself and her late husband's employer concerning her right to obtain and receive compensation from said employer under the Missouri Workmen's Compensation Act.

"An alternative writ of mandamus was ordered issued, respondents waived the issuance and service thereof and filed their return herein.

"By said return respondents for the purposes of this proceeding admitted the facts above recited, set out the enactment of the Workmen's Compensation Act, the holding of the election at which the act was approved in referendum on November 2, 1926, the canvass of the official returns of said election and the certification thereof by the Secretary of State to the Governor and the proclamation of the Governor on November 16, 1926, declaring the law approved. Said return further specifically sets up Section 79 of the Compensation Act reading as follows: 'Sections 2 to 4, inclusive, and Section 34 of this Act shall not take effect until September 1, 1925.' The return also recited that the Fifty-third General Assembly of the State of Missouri, at which the Workmen's Compensation Act was enacted, adjourned on the ninth day of April, 1925, and that the act in question in the absence of the referendum would have gone into effect on the ninth day of July, 1925, except for said Sections 2, 3, 4 and 34, which would by the terms of said act have gone into effect on September 1, 1925, fifty-four days later. Respondents further set out (a conclusion of law) that said Sections 2, 3, 4 and 34 of the act did not become effective until fifty-four days after the Governor's proclamation on said date of November 16, 1926.

"Relator admitting the allegations of fact in respondents' return but not the conclusions of law therein, filed her motion herein for judgment on the pleadings.

"The Two Questions of Law:

"(a) Did the Compensation Act, speaking generally, become effective immediately following the general election at which it was approved upon referendum, November 2, 1926, or was it delayed in becoming effective until the Governor's proclamation on November 16, 1926?

"(b) Did Sections 2, 3, 4 and 34 of the act become effective at the same time that the act generally became effective under the referendum, or did these sections become effective only after the expiration of fifty-four days from the time that the act generally became effective under the referendum?"

Our *Amicus Curiae* is, in one sense, the real party in interest, as it has to pay the claim, if it be allowed by the Commission. Counsel for the Montgomery Elevator Company, thus tersely states the case:

"On November 2, 1926, at the biennial general election in Missouri, the electorate voted upon the Missouri Workmen's Compensation Law of 1925, which had been duly passed by the Legislature and approved by the Governor, and duly referred to the people under the provisions of Section 57 of Article IV of the Missouri Constitution, and the provisions of Chapter 47 of the Revised Statutes of Missouri, 1919. On November 4, 1926, Marshall Elsas while at work in the employ of the Montgomery Elevator Company at Kan-

sas City, Missouri, received injuries as a result of a fall from a ladder in an elevator shaft, from which he died on November 24th. Relator is his widow.

"On November 16, 1926, after a canvass of the official returns of the election and the certification of such canvass to the Governor of Missouri, by the Secretary of State in conformance with the provisions of Section 5913, Revised Statutes 1919, the Governor issued a proclamation declaring the law approved by the referendum held on November 2nd. On July 8, 1927 (under the facts recited in relator's petition, and admitted by the return), relator filed an employee's report of the accident with the Missouri Workmen's Compensation Commission, together with a notice of disagreement with the employer, and a claim for compensation in the sum of $13,150. On July 9th respondents refused to assume jurisdiction of the claim for compensation on the ground that the Compensation Act did not become effective until on or after November 16, 1926, the date of the Governor's proclamation, and on the further ground that the liability sections of the law did not become effective until January 9, 1927.

"On September 1, 1927, relator filed a petition for a writ of mandamus against respondents to compel them to assume jurisdiction of her claim for compensation. An alternative writ was ordered issued. Issuance and service of the writ were waived by respondents, who filed a return. Relator then filed a motion for judgment on the pleadings on which the case is now presented.

"The Issue of Law in the Case.

"The question to be determined by this court is whether the Compensation Act became effective on November 2, 1926, the date of the referendum by which it was approved, or on November 16th, the date of the Governor's proclamation. There is in addition a secondary issue—whether Sections 2, 3, 4 and 34 of the Compensation Act became effective on the same date as the remainder of the act, or upon the expiration of fifty-four days from the effective date of the act."

The statement of the learned Attorney-General for the Commission, neither adds to, nor takes from the statements, we have used, supra. In fact we could taken either of the three statements as a statement of the cause. Relator's statement is the more elaborate. Each of the three statements agree upon the questions of law to be solved. When we said, supra, that Amicus Curiae was the real party, in interest, because it would have to pay the award, we did not mean to say that the Commission had no interest. The Commission is vitally interested in knowing the effective date of this law. Each has an interest. One a financial interest, the other an official interest. We think the foregoing fairly outlines the case.

I. For the principal opinion we have selected the instant case, because the sole contention in this case, is, that what is known as

the Workmen's Compensation Act (Laws 1925, pp. 375 to 407, both inclusive) became effective on November 2, 1926, the day which it (in a referendum election) received a majority vote of the people of Missouri. In the companion case (our No. 28236, supra) the contention is that the law, at least, became effective on November 16th, the day upon which the Governor proclaimed the result of the referendum vote. The respondent Commission contends that the vital portions of the law, i. e. Sections 2 to 4, both inclusive, and Section 34 of the law, did not become effective until January 9, 1927, or fifty-four days after November 16, 1926.

Our *Amicus Curiae* is not particular as to which date we declare the effective date of the law, of the two dates suggested, i. e., November 16, 1926, and January 9, 1927, but as to the third suggested date (Nov. 2, 1926) such *Amicus Curiae* is vigorously opposed to having it declared the effective date of the complete act. In its case the injury to the employee was on November 4, 1926, or two days after the vote of the people. *Amicus Curiae* is content with saying:

"The Missouri Workmen's Compensation Law became legally effective *on* or *after* November 16, 1926, and was not in effect when relator's husband was killed."

Thus we have the contention of the several parties in interest, and the real reason for selecting the instant case for the principal opinion. If we rule, as the relator in this case contends that we should rule, that the whole law became effective on November 2, 1926, the ruling will settle both cases.

II. The learned Attorney-General for and in behalf of the Commission has made many suggestions as to what the General Assembly may do in framing and enacting a law, thus:

(a) "The General Assembly has power to pass a law which will take effect upon the happening of a future event. The Local Option Law took effect in certain counties only upon the vote of the people in such counties. The vote did not create the law, but made it operative."

Of this question there can be no doubt. The General Assembly can pass laws, like the Local Option Law, and make its operation dependent upon future action by the people.

(b) "The General Assembly may provide when certain sections of the law shall become effective."

No one will question this rule, but its applicability to the real issue in the instant case is quite a different proposition.

(c) "A statute may have a potential existence, although it will not go into effect until a future time."

(d) "The Legislature may provide that different parts of a statute shall go into effect at different times."

(e) "Statutes should be construed to carry out the legislative intent, and reasonable effect should be given to every word, phrase and sentence when possible."

All these rules may be conceded (and most certainly we are not going to deny most of them), and yet we have not gotten far in the solution of the real question in this case. These rules apply more particularly to the acts of the usual legislative body, but we are more particularly concerned, in the instant case, about the constitutional provision with reference to acts of the Legislature which have been referred to the people for a vote thereon. The Legislature has completed its work, and the people by petition for referendum have invoked a vote on the legislative act, under a constitutional provision (Sec. 57, Art. IV, Missouri Constitution, as amended at the election in 1908), and by this vote the legislative act has been adopted by a vote of the people. In this Section 57 of Article IV of the Constitution (constitutional amendment of November, 1908), there is something said as to the effective date of a legislative act thus approved by a referendum vote. The voice of the Constitution is stronger than that of the Legislature, and stronger than all of the rules of construction, supra, as urged by the Attorney-General in behalf of the Commission. If there be *conflict*, both legislative acts and rules of construction, must fall before unambiguous and plain constitutional provisions. We are not saying now that there are conflicts (there may be), but, at this point, we can safely concede the rules of construction, supra, and say that the ultimate ruling herein must depend upon the constitutional provision, supra, and its construction, if the wording thereof requires construction. Sometimes the language is so plain and unambiguous as to require no construction. It simply speaks for itself, even to the lay mind. Of this constitutional provision next.

III. We have ruled upon the words used in the Constitution, but not in the exact situation which we have in this case. As to referred laws, Section 57 of Article IV of the Constitution says: "Any measure referred to the people *shall take effect and become the law when* it is approved by a majority of the votes cast thereon, *and not otherwise.*"

At first blush it would seem that this language is plain and unambiguous. This language is dealing with a referred legislative act, and says that such act *"shall take effect and become* the law when it is approved by a majority of the votes cast thereon, *and not otherwise."* The latter words, "and not otherwise" would seem to emphasize the fact that the *vote itself* fixed the effective date of the law. In other words, these words "and not otherwise" seem to pre-

clude the idea that anything further need be done to give effect to the law, as written.

Such a constitutional provision has been held to·be self-executing. [State v. Langworthy, 55 Ore. l. c. 308; Stevens v. Benson, 50 Ore. l. c. 272 et seq.; Arkansas State Tax Commission v. Moore, 103 Ark. l. c. 51-52; Bradley v. Union Bridge & Construction Co., 185 Fed. l. c. 545, 546; Thompson v. Secretary of State, 192 Mich. l. c. 520, 50 L. R. A., note 3, p. 198.] The reason is apparent, and has been well expressed in the Bradley case, supra (considering the Oregon Constitution), in this language:

"And in my judgment it is not within the power of the Legislature to regulate the matter by general law. The initiative power reserved to the people is a constitutional right vested in them by the fundamental law of the State and· to be exercised independent of the legislative assembly. When the people exercise such right· and enact a law at the polls, it becomes the expressed will of one branch of the lawmaking power, and it cannot be postponed or delayed by the other. If the Legislature may lawfully postpone the taking effect of an initiative measure until the vote has been canvassed *and the Governor's proclamation issued,* or for any other length of time, the right reserved to the people to propose and adopt laws is not independent of, but subservient to, the Legislature; and, if the Legislature may postpone the taking effect of such a law at all, it may do so for any length of time, and thus thwart the will of the people and render nugatory the constitutional provision reserving to them the right to propose and adopt laws. The canvass of the vote and the proclamation of the Governor is only official and authoritative evidence of the result of the election, and is not made necessary to the enactment of the law itself. The law is adopted or rejected at the time the vote is cast, and not when the official canvass is made. *It may be suggested that under this view a law may in fact be in force without those affected thereby being aware of it; but this may be· and often is true of acts of Congress and other lawmaking bodies which take effect from and after the date of their passage.*"

An initiated act was involved in this case, under the Oregon Constitution, but the same reason exists for keeping the hands of the Legislature off of a referred law, as to its effective date. The italics in the quotation are ours.

The Arkansas Court in 103 Ark. l. c. 52, supra, thus speaks: "Without any action by the Legislature, laws could be initiated *or referred* in accordance with the terms of this constitutional amendment, and we hold that it was clearly intended to be and is self-executing. We are confirmed in this view by a well-considered opinion of the Supreme Court of Oregon, holding a like provision of the Constitution of that State, from which ours was borrowed, self-executing. [Stevens v. Benson, 91 Pac. (Ore.) 577.]"

The case in 91 Pac. 577, mentioned by the Arkansas court, is Stevens v. Benson, supra, 50 Ore. 1. c. 372. Our constitutional provision, like that of Arkansas, was borrowed from Oregon. In 50 Ore. 1. c. 372 and 373, the Oregon court discusses their constitutional provision and rules it to be self-executing, and for the very reasons expressed in the Bradley and Arkansas State Tax Commission cases, supra. The reasons are sound. If the Legislature, in the face of this constitutional provision, could pass a law, either general or special, making a later date, *as the time when the vote was counted and the Governor proclaimed such vote, the effective date of the referred law,* then such Legislature could go further and either fail to pass any law fixing an effective date for the referred act, or fix an unreasonable future date, and thus defeat the very purpose of referendum. We do not want to be misunderstood on this vital question, and add to what we have said, that if the Legislature fixes a future effective date in the act passed by such Legislature, and such effective date *has not passed,* and thereby become *ineffective,* at *the time* of the *referendum vote,* then the date fixed in the referred act will be the date upon which the law becomes effective and in force. This, because the vote makes *that* the law *which* has been written in the act.

A suggestion here may not be out of order. The Legislature knew of Section 57 of Article IV of the Constitution. It knew that such a law, as the one involved here, was subject to be referred to the people. It could have, in view of this fact, so arranged its effective date, by writing it in the act, and thus have the act fix an effective date, for a part of the Act, beyond the day of election, because the election vote approves the law as written, barring dates which have passed, by lapse of time, when the vote is taken. Thus the Legislature could have said that Sections 2, 3, 4 and 34 of this act shall take effect on September 1, 1925, or in the event of a referendum, then at a fixed date after the election, and thereby after the other sections became effective by the referendum vote. Or the . Legislature could have done, as the Oregon legislature did in the act involved in Salem Hospital v. Olcott, 67 Ore. 1. c. 451, that is, it could have used some general terms to fix a date after the act went into effect, whether it went into effect per force of the act itself without referendum, or by reason of a referendum vote.

The phrase used in the Oregon act, discussed in 67 Ore. 1. c. 451, was, "June 30th next following *the taking effect* of this act," and thus covered both situations, i. e. (1) the effective date, if there was no referendum, and (2) the effective date, if there was a referendum. In the latter instance the Oregon court ruled (on a referred law), that it could not become effective before the referendum vote. The case clearly indicates that the date of the vote is the

effective date of a referred law, if the law itself does not fix a different date.

As stated, supra, our court has not, as yet, pointedly ruled the exact status we have here, but in effect has ruled it. We have ruled that a referred law could not go into effect prior to the referendum vote. [State ex rel. v. Carter, 257 Mo. l. c. 68 et seq.] In this Carter case we expressly approve of rulings in Bradley v. Union Bridge & Construction Co., 185 Fed. 545, and Arkansas Tax Commission v. Moore, 103 Ark. 48. In Carter's case, supra, FARIS, J., quoted from State ex rel. v. Moore, 145 S. W. l. c. 201, this language:

"Under this initiative and referendum amendment, only 'laws necessary for the immediate preservation of the public peace, health or safety' are excepted from its provisions, and no power is reserved by the people to pass directly upon such laws. All other laws are subject to its operation; and, ninety days being given by its terms from the final adjournment of the session of the Legislature which passed them in which to demand or order the referendum thereon. *they cannot take effect or go into operation till* the expiration of ninety days after such adjournment, *nor thereafter until approved by the people, if the referendum is ordered or invoked.*"

This is the same case which in 103 Ark. 48, is styled Arkansas Tax Commission v. Moore, and the quotation, supra, from 145 S. W. l. c. 201, is found on page 53 of the 103 Ark. The two opinions are the same, but styled one way in the Southwestern Reporter, and the other way in the Arkansas official reports.

The Arkansas Court clearly indicates, in the quotation approved by this court, supra, that the date of the vote is the effective date of the law.

In State ex rel. Drain v. Becker, 240 S. W. l. c. 235, the present writer, in speaking of Section 57 of Article IV of our Constitution, said:

"As suggested above there is a sentence in this amendment with reference to the time when such bill becomes a law. This sentence reads: 'Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise.' No exception is written in this law."

We say now what we said then, "No exception is written in this law." It would have been better perhaps had we said, "No exception is written in this constitutional provision," but it is well enough, because a constitutional provision is in a broad sense a law —an organic law. We thought then, and think now, that these referred laws, under this constitutional provision, become effective upon the vote of the people, "and not otherwise." With these views the rule should be made absolute in this case, but we will take up other matters in succeeding paragraphs.

IV. Learned counsel for our *Amicus Curiae* urges that, under Section 5913, Revised Statutes 1919, the referred law could not become effective before the proclamation of the Governor. This section is a part of Chapter 47, Revised Statutes 1919, which contains provisions for the legal machinery, to make more fully effective the constitutional provisions in Section 57 of Article IV of the Constitution. This Section 5913, Revised Statutes 1919, reads:

"The votes on measures and questions shall be counted, canvassed and returned by the regular boards of judges, clerks and officers as votes for candidates are counted, canvassed and returned, and the abstract made by the several county clerks of votes on measures shall be returned to the secretary of state on separate abstract sheets, in the manner provided for abstract of votes for state and county officers. It shall be the duty of the secretary of state, in the presence of the governor, to proceed within thirty days after the election, and sooner if the returns be all received, to canvass the votes given for each measure; and the governor shall forthwith issue his proclamation, giving the whole number of votes cast in the state for and against each measure and question, *and declaring such measures as are approved by majority of those voting thereon to be in full force and effect as the law of the State of Missouri from the date of said proclamation*: *Provided*, that if two or more measures shall be approved at said election which are known to conflict with each other or to contain conflicting provisions, he shall also proclaim which is paramount in accordance with the provisions of Section 5912."

There is no question that if the literal provisions of this statute are to prevail, no referred law can go into effect until the Governor issues a proclamation so declaring. At least it is apparent that the lawmaker undertook to fix the effective date of the referred law as of the date of the Governor's proclamation. But if these constitutional provisions are self-executing, as the great weight of the cases rule, then the only statutes which could be passed would be those which would facilitate the execution of the constitutional provisions, without conflicting with any of the rights conferred by the Constitution.

If there be conflict the statute, rather than the Constitution, must fall. In L. R. A. 1917B, pages 18 and 19, there is an extensive note on this question, and on page 19 the learned annotator thus concisely states the rule: "Notwithstanding a constitutional provision conferring initiative and referendum powers may be self-executing, legislation may be enacted to facilitate the enforcement of the provision, *but such legislation .cannot limit or restrict the rights conferred by the constitutional provision.*" (The italics are ours.)

To the same effect is the rule stated in 50 L. R. A. page 200, note, thus:

"But legislation may be enacted to facilitate the enforcement of constitutional provisions relating to the initiative and referendum even though they are self-executing, and such laws will be obligatory upon the court when intended by the Legislature to be mandatory, so long as they do not curtail the rights reserved, or exceed the limitation specified in the amendment. [Stevens v. Benson, 50 Ore. 269, 91 Pac. 577.]

"So it has been held that an enabling act of the Legislature, intended to carry into effect a self-executing constitutional provision conferring the right of initiative and referendum, which proposes restrictions on proposed legislation not found in the Constitution, is invalid. [Hammett v. Hodges, 104 Ark. 510, 149 S. W. 667.]"

Other cases to like effect are found in this note. But the rule is simple and plain. If the constitutional provision is self-executing (as is our Sec. 57, Art. IV), then the legislation must be to facilitate the enforcement of the Constitution, and must not curtail or limit any right created and conferred by the Constitution. If the law undertakes to limit the provisions of the Constitution, such law must fall by reason of a conflict with the Constitution. In addition to the authorities cited, supra, see also State ex rel. Fleck v. Dallas City (Ore.), Ann. Cases 1916B, 1. c. 858; Woodward v. Barbur, 59 Ore. 70.

The Constitution (Sec. 57, Art. IV) in plain and unambiguous terms says just when a referred law shall go into effect. It says: "Any measure referred to the people *shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise.*" This statute (Sec. 5913, R. S. 1919) relied upon by counsel undertakes to make the date of the Governor's proclamation the effective date of the referred law. It undertakes to give force to the Governor's proclamation. In so far as this section undertakes to give the Governor, or any other person, the power to say when the referred law shall be the law of this State, it conflicts with the Constitution, and must fall.

That the lawmakers may fix a date for counting the votes, and a publication of the result by proclamation, is not questioned. This would not undertake to change the *effective date* of the referred law. Such would give to the public information of just what happened upon election day, but would not thwart the right to have the *vote* fix the effective date of the law, as plainly stated in the Constitution. Certain it is, this constitutional provision confers no right upon the Governor to fix an *effective date* for a referred law.

Nor can we change the Constitution, by mere force of our opinion, just because some hardships may be occasioned by following the Constitution. The Constitution may have made it hard upon a few litigants, where the accident occurred within a few days after the vote, but this is no reason to ask this court to rewrite the Constitu-

tion. Courts are not established for that purpose. The fixing of most any effective date might work some hardships.

Our statute, supra (Sec. 5913, R. S. 1919), seems to have been bottomed upon the Colorado constitution rather than our own. [Re Interrogatories By The Governor (Colo. Sup. Court), 7 A. L. R. l. c. 527 and 528.] As to referred laws the Colorado constitution says:

"All elections on measures referred to the people of the state shall be held at the biennial regular general election, and all such measures shall become the law or a part of the Constitution when approved by a majority of the votes cast thereon, and not otherwise, *and shall take effect from and after the date of the official declaration of the vote thereon by proclamation of the governor,* but not later than thirty days after the vote has been canvassed."

If our Constitution has been so worded, Section 5913, Revised Statutes 1919, supra, would not have conflicted with it, but as it is, there is clear conflict.

In State ex rel. v. Carter, 257 Mo. l. c. 71, FARIS, J., sets out in italics our constitutional provision (Sec. 57, Art. IV) as to when a referred law shall go into effect, and then says:

"Can there be two minds that this language has *specific reference to the time of the taking effect of an act of the Legislature* touching which the referendum provisions of the law and the Constitution have been invoked? Can there be any, the remotest doubt that likewise *this clause means what it says?*"

The whole trend of the opinion is to the effect that this constitutional provision is not only plain and unambiguous, but that it means just what it says. If this be true, then the statutory provision for the Governor to give the law effect by proclamation, must, as we have said, supra, fall, because of conflict. The word *"when"* in the Constitution should not be frittered away, or whittled down by construction. It means, in the connection wherein used, in our Section 57 of Article IV of the Constitution, *at the time* it is "approved by a majority of the votes cast thereon, *and not otherwise."* This precludes the idea of any other effective date. To get the intent we must go to the constitutional provision, and not to the act passed without a thought of referendum. The lapsed date of September 1, 1925, has no bearing upon what construction should be given to the Constitution. This date (lapsed by time before the referendum vote), became and was a dead letter so far as determining the effective date of the law under the Constitution. This obviates the contention that parts of the law only became effective on January 9, 1927.

From all, we conclude, that our alternative writ should be made absolute, and it is so ordered. All concur.