Argued March 4, affirmed March 25, 1953

# PORTLAND PENDLETON MOTOR TRANSPORTATION CO. *v.* HELTZEL, PUBLIC UTILITIES COMMISSIONER

255 P. 2d 124

Robert Y. Thornton, Attorney General of the State of Oregon, of Salem, and Lloyd G. Hammel, Assistant Attorney General, of Salem, argued the cause and filed briefs for appellant.

Moe M. Tonkon, of Portland, argued the cause for respondent. With him on the brief were John M. Hickson, William B. Adams and Wallace G. Mills, all of Portland.

LATOURETTE, C. J.

This is a proceeding under the uniform declaratory judgments act brought by the plaintiff, a common motor carrier, against the defendant as Public Utilities Commissioner, to determine whether ch. 428, Oregon Laws 1951, relating to "motor transportation fees and taxes" became effective or operative on January 1, 1952, the date designated by such act as being the effective date of such act, or on November 4, 1952, the date of the referendum election, wherein the people by vote approved said measure.

The plaintiff claims that the tax became payable not earlier than November 4, 1952, the date of the election, by virtue of the following clause in Art. IV, § 1 of the constitution:

"* * * Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise",

while the defendant contends that the tax became effective on January 1, 1952, by virtue of § 2, ch. 428, Oregon Laws 1951, which follows:

"This Act shall become effective January 1, 1952."

This matter becomes very important since it involves nearly two million dollars in taxes, depending on the effective date of the act aforesaid.

■ By the constitutional amendment of 1902, the people adopted what is known as the initiative and referendum law by which they reserved to themselves the power of enacting laws through the initiative or by a referendum of acts passed by the legislature. When a referendum is invoked, the act of the legislature then becomes merely a measure to be voted on by the people, and, if the people vote in the affirmative, the measure becomes an act; if they vote in the negative, the measure fails. We read in Art. IV, § 1 of the constitution that:

"* * * All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise."

To gain a proper perspective of the question at issue, we will refer to a few decisions bearing light on the subject.

We said in *Davis v. Van Winkle,* 130 Or 304, 307, 278 P 91, 280 P 495:

"* * * In fact the measure enacted by the legislature, which is referred to the people, is not a law. It will never become a law unless a majority

of voters voting upon the referred bill vote in favor of the bill. The bill enacted by the legislature does not become *operative* until ninety days after the adjournment of the legislature. During that period if it is referred to the people, it is again reduced to a bill." (Italics supplied)

We read the following in 59 CJ, Statutes, 717, § 301:

"When approved by the people at the referendum election the legislative act becomes complete and operative as such and takes effect as of the time provided for the taking effect of such acts, if the measure itself does not fix a different time; and the referred law cannot go into effect prior to that date. Statutes governing the time which acts not subject to referendum under the constitution shall take effect cannot in any event override the express constitutional provision as to when laws subject to referendum shall take effect; but if the legislature fixes a future effective date in the act, and such date has not passed and thereby become ineffective at the time of the referendum vote, then the date fixed in the referred act will be the date on which the law becomes effective."

In *Sears v. Multnomah County*, 49 Or 42, 45, 88 P 522, in referring to Art. IV, § 1 of the constitution we said:

"* * * The clause in the amendment which reads,

" 'Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise,'

clearly means that a law upon which the referendum is invoked cannot take effect prior to its approval by the vote; and consequently no act that is subject to the referendum can be made to go into *operation* for 90 days after the adjournment of the session or its approval by vote." (Italics supplied)

In *Kadderly v. Portland,* 44 Or 118, 147, 74 P 710, 75 P 222, speaking through Mr. Justice ROBERT S. BEAN, we said:

"* * * As to all other laws [referring to those where the emergency clause is not appended] the amendment applies, and they cannot be made to go into *operation* for 90 days after the adjournment of the session at which they were adopted, or until after approval by the people if the referendum is invoked." (Italics supplied)

In passing we should mention *Salem Hospital v. Olcott,* 67 Or 448, 136 P 341. The legislature in enacting the Workmen's Compensation Act provided in the act that " 'every workman subject to this act * * * who, after June 30th next following the taking of effect of this act * * * sustains personal injury' " shall be entitled to the benefits of the act. To that act the referendum was invoked. We held that the effective date of the act was June 30 after the November election and not June 30 after the enactment of the act by the legislature, the effective date being controlled by Art. IV, § 1 of the constitution.

Our attention has been called to *State v. Missouri Workmen's Compensation Commission,* 318 Mo 1004, 2 SW2d 796, which, in our opinion, is on all fours with the instant case. In passing we call attention to the fact that the constitutional provision concerning the initiative and referendum was, as said by the Supreme Court in that case, "borrowed from Oregon", and the language used therein regarding the effective date is identical to the language employed in the Oregon constitution.

In the above Missouri case the legislature in the early part of 1925 enacted the Workmen's Compensa-

tion Act wherein it was stated that certain sections of the act would not take effect until September 1, 1925. In the absence of a referendum, the act would have gone into effect on July 9, 1925, this being 90 days after the adjournment of the legislature, excepting for the provision which fixed the effective date as September 1, 1925. At a referendum election held November 2, 1926, the act was approved by the people and later proclaimed by the governor on November 16, 1926. In the Missouri case, as well as in the instant case, the effective date as fixed was prior to the referendum election. The court there held that the November 2 election date was the date on which the act became effective and at p. 802 said:

> "* * * It means, in the connection wherein used, in our section 57 of article 4 of the Constitution, *at the time* 'it is approved by a majority of the votes cast thereon, *and not otherwise.*' This precludes the idea of any other effective date. To get the intent, we must go to the constitutional provisions, and not to the act passed without a thought of referendum. The lapsed date of September 1, 1925, has no bearing upon what construction should be given to the Constitution. This date (lapsed by time before the referendum vote) became and was a dead letter so far as determining the effective date of the law under the Constitution."

The defendant urges that the Missouri case is not authority for the reason that Missouri has the following constitutional provision:

> " 'That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly.' Constitution, Article 2,

§ 15; Readopted as Article 1, § 13, 1945 Missouri Constitution.''

██ Defendant's position is untenable because, in the first place, the opinion is not based on the above constitutional provision; in fact, it is not even mentioned, and for a good reason, we think, because a referred measure, when favorably voted upon by the people, is not a law passed by the general assembly but by the people. It is a familiar rule that the state constitution, unlike the federal constitution, is an instrument of limitation and may be restrictive, but in the absence of a limitation the legislative body's power is unfettered. When an act is referred to the people it then becomes a measure or a bill and does not mature into an act until the people approve the measure, so that ch. 428, Oregon Laws 1951, when approved by the people, became the act of the people rather than that of the legislature.

Of passing interest is the case of *State v. Moore,* 103 Ark 48, 145 SW 199, 200, 201, 202, 203, in which the court construed the initiative and referendum amendment to the constitution which, as pointed out in the decision, was borrowed from Oregon. In that case the legislature passed an act on June 19, 1911, in which it was provided that the assessment of property should become effective in the year 1911 as on the first Monday in June of said year. The court said that:

"* * * The Attorney General contends that said act of the Legislature was not effective and in force at the bringing of the suit, because of the provisions of amendment No. 10 to the Constitution, known as the initiative and referendum amendment, thus making it necessary to determine the effect of said amendment.''

Reading further we find this language:

"Under this initiative and referendum amendment, only 'laws necessary for the immediate preservation of the public peace, health or safety' are excepted from its provisions, and no power is reserved by the people to pass directly upon such laws. All other laws are subject to its operation; and, 90 days being given by its terms from the final adjournment of the session of the Legislature which passed them in which to demand or order the referendum thereon, they cannot take effect or go into operation till the expiration of 90 days after such adjournment, nor thereafter until approved by the people, if the referendum is ordered or invoked."

And further:

"The fact that by the terms of the statute something is to be done under it before the expiration of the constitutional period for it to take effect does not amount to a legislative direction that the act shall take effect at that time, or sooner than the time fixed in the Constitution.

"* * * * * *

"The provisions of the amendment must be liberally construed to effectuate the purpose of the sovereign people, who by its terms expressly reserved the right to order the referendum upon all laws passed by the Legislature, except such as the Legislature itself should determine and in so doing declare were necessary for the immediate preservation of the public peace, health, or safety. The concluding provision of the revenue act and the others, fixing dates for the performance of certain things before the act could become operative under the constitutional amendment, unless it comes within the exception, do not manifest an intention upon the part of the Legislature to put it into effect as a law necessary for the immediate preservation of the public peace, health, or safety, and were not meant for and are not a legislative determina-

tion that the act should take effect as such; and it could not therefore take effect until 90 days after the final adjournment of the session of the Legislature at which time it was passed, or after its approval by the people, if the referendum is invoked."

■ It could be argued that the interpretation of the initiative and referendum provisions of the Missouri and Arkansas constitutions by the courts of those respective states is neither compelling nor obligatory on us because the initiative and referendum amendment to our constitution was original with us and borrowed by those states from us. In such a situation it is our duty to interpret our own constitution independently of the construction placed on the same by the courts of those states; however, it is a well-recognized rule that if the interpretation placed on the constitution by the courts of those states is predicated on logic and clear thinking, such interpretation is persuasive and entitled to favorable consideration.

Let us now approach this question from another viewpoint. Chapter 428, Oregon Laws 1951, is divided into two sections: section 1 amends § 17 of the original act on the subject, which amendment has to do with increasing transportation fees and taxes. Section 17, as thus amended by § 1 of the 1951 act, contains the substantive features of the law. Section 2 merely provides for its effective date as of January 1, 1952, instead of "ninety days from the end of the session" as provided in the constitution: Art. IV, § 28. It is obvious that if the 1951 act had not itself provided an effective date, then the effective date would have been governed by the constitutional provision.

■■ It is elementary that the date an act shall become effective is a part of every law enacted by the

legislature. If no other date beyond the 90-day constitutional provision is written into the act, then the constitutional provision governs to all intents and purposes as though expressly stated in the act itself. In other words, in such a case this 90-day provision is impliedly written into the law. It seems plain that no more force should be attached to the express provision as to the effective date than to the implied provision, except perhaps when the expressed date is one that follows the referendum election. See *Salem Hospital v. Olcott,* supra.

██ Let us assume for the sake of argument that this 1951 act contained no provision as to its effective date. In the absence of referendum, it would have gone into effect 90 days ''from the end of the session.'', and the tax would then have been due. Had a referendum election been held on such an act, it certainly could not be successfully contended that, upon its approval by a vote of the people, it became effective and the tax due and payable retroactively at the end of the 90-day period, in view of the express provisions of Art. IV, § 1 of the constitution, which makes the date of the election the effective date of the law. If, in such a case, the 90-day constitutional provision became inoperative, a fortiori, the statutory effective date, January 1, 1952, likewise became ineffective, for it is axiomatic that the legislative branch of the government, whether it be the legislature or the people through the initiative or referendum, cannot enact legislation in conflict with the state constitution; so that in the case at bar, where the constitution fixes the date of the election as the effective date, the effective date specified in the statute must necessarily give way to that fixed by the constitution.

Much has been said in the briefs about the construction of statutes. It seems to us that this is beside the point as we are dealing also with the construction of the constitution. It is presumed that the legislature in enacting legislation is always mindful of the limitations placed on it by the constitution. There is no question in our minds but that the legislature in the present case fixed the effective date of January 1, 1952, with the idea in view that that would be the effective date in the absence of a referendum. In any event, there is a well-recognized canon of construction regarding tax laws, and that is where the authority to tax is doubtful, the doubt will be resolved in favor of the taxpayer and against the tax. *Eugene Theatre et al. v. Eugene et al.*, 194 Or 603, 243 P2d 1060.

■ It is argued by the defendant, quoting from *Henderson v. State Tax Commission,* 182 Or 519, 522, 188 P2d 630,

"* * * 'Beginning with Kent's dictum in Dash v. Van Kleeck, (7 Johns, N. Y. 477, 5 Am. Dec. 291) 'it has been continuously reaffirmed that "the rule is that the statutes are prospective, and will not be construed to have retroactive operation unless the language employed in the enactment is so clear that it will admit of no other construction." ' ",

that the effective date of January 1, 1952, was prospective when passed by the legislature but became retroactive when passed by the people, and that, since the language employed in the law was so clear that it would admit of no other construction, January 1, 1952, was clearly intended to be the effective date. We have no quarrel with the rule suggested; however, in the present case we are construing the legislative act in conjunction with Art. IV, § 1 of the constitution.

It therefore becomes apparent that in construing the two jointly we must construe them prospectively since there is a very apparent ambiguity between the two, and, in so doing, the prospective date would obviously be November 4, 1952.

10. It has been suggested that, because of the course of events, the word "effective" used in the statute should be construed to mean "operative", and, therefore, since Art. IV, § 1 of the constitution defines the effective date of the law as the date of the election, there would be no conflict and the tax could be legally collectible as of January 1, 1952. There is no merit in the above because Art. IV, § 1 of the constitution states that the "measure * * * shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise.", and in construing this provision in *Davis v. Van Winkle,* supra, *Sears v. Multnomah County,* supra, and *Kadderly v. Portland,* supra, we used the words "take effect and become the law" interchangeably with the word "operative", clearly indicating that Art. IV, § 1 of the constitution precluded the statute from becoming effective or operative prior to the election date. That the word "operative" was used advisedly in the above three cases is strengthened by the use of the word "operative" in Art. IV, § 1a of the constitution, providing for a referendum against one or more items, sections or parts of an act of the legislature. For there it is stated that,

"* * * The filing of a referendum petition against one or more items, sections, or parts of an act shall not delay the remainder of that act from becoming operative."

Construing the above with Art. IV, § 1 of the constitution, it is obvious that the word "operative" and

the words "take effect and become the law" were used synonymously and interchangeably.

Affirmed.

WARNER and BRAND, JJ., dissenting.

LUSK, J. (specially concurring).

I concur in the result reached by the court. Unwittingly, perhaps, the court has ignored a distinction which in another case might be of vital importance. As to this I shall state my views.

Although courts and text writers sometimes use the words "effective" and "operative" interchangeably with reference to statutes, yet in certain connotations these words must be given different meanings, and the "effective date of an act may or may not be its operative date. This may be illustrated quite simply by assuming that the act now under consideration had provided that it should become effective January 1, 1953, instead of January 1, 1952. If such an act had been referred to the people and approved by a majority of the votes cast thereon at the 1952 general election it would have become a law on the day of the election as provided by Art. IV, § 1, of the constitution, but could not have gone into operation at that time. That is to say, the motor carriers would not have become subject to the new tax until January 1, 1953. This is because the act would have so provided, and the people would have voted in favor of the bill which the legislature passed and not some other bill. Similarly, had the act in question provided that "from and after January 1, 1952" certain taxes should be assessed against and collected from motor carriers, I should have thought that, notwithstanding the referendum,

January 1, 1952, would have been determined as the time when the tax would commence to be a liability of the carriers, although the measure would not have become law until November 4, 1952.

I do not believe that Art. IV, § 1, of the constitution should be so construed as to give to a minority of the voters the power by merely invoking the referendum to prevent the majority from approving a measure passed by the legislature, even though such approval should not come until after the time when the particular measure by its terms was to become operative. On the contrary, I think that the people may at the polls adopt or reject the very law passed by the legislature. Hence, in a case like this, the initial question is one of statutory construction, namely, whether § 2 of ch. 428, Oregon Laws 1951, means that the act was merely to have gone into effect as a law on January 1, 1952, or whether it was to become operative (in the sense which I have indicated) on that date. If the latter were the case, then, while the referendum would have prevented the measure from becoming a law until it was approved by the voters on November 4, 1952, its provisions, nevertheless, upon adoption by the people, would operate retroactively upon the motor carriers subject to the tax, beginning with January 1, 1952. I am not prepared, however, to give the act this construction. The legislature, of course, knew when they passed it that it might be referred to the people. Without some clearer expression than the act contains of an intention to impose the tax retroactively in case the people should approve it at the polls, I am satisfied to hold that the law did not go into operation and the tax liability did not commence to accrue until November 4, 1952.