AMERICAN ENERGY, INC.,
a Washington corporation;
McMeekin Enterprises, Inc.,
dba Powerhouse Fuel,
an Oregon corporation;
Juniper Fuel, Inc.,
dba Sisters Pump House,
an Oregon corporation;
Pliska Investments, LLC,
dba Space Age Fuel,
an Oregon limited liability company;
and Sisters Mainline Station, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

CITY OF SISTERS,
an Oregon municipal corporation,
*Defendant-Respondent.*

Deschutes County Circuit Court
10CV0232AB; A146039

280 P3d 985

Paul R. Romain argued the cause for appellants. With him on the briefs was The Romain Group, LLC.

Steven D. Bryant argued the cause for respondent. With him on the brief was Bryant, Emerson & Fitch, LLP.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Brewer, J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

The issue in this case is whether a city ordinance that is subsequently referred to the people by a citizen referendum is "enacted" when it is adopted by the city council, or when it is approved by the people. Plaintiffs brought this action seeking to enjoin defendant City of Sisters from implementing an ordinance imposing a fuel tax on the ground that the ordinance is void and unenforceable because, according to plaintiffs, it was enacted during a statewide moratorium on the establishment of local fuel taxes. The trial court held that, because the ordinance was enacted when it was adopted by the city council, not when it was approved by the people, the ordinance was not enacted during the moratorium. We agree with the trial court and affirm.

The material facts are undisputed. On August 13, 2009, the Sisters City Council adopted Ordinance No. 388, imposing a business license tax on motor vehicle fuel dealers. Later, a city resident filed a referendum petition and successfully referred the ordinance to voters pursuant to Article IV, section 1, of the Oregon Constitution.[1] Shortly thereafter, but before the vote on the referred ordinance, the legislature enacted the Oregon Jobs and Transportation Act (OJTA), which, among other things, placed a moratorium on the establishment of local fuel taxes.[2] The OJTA provides, in pertinent part:

---

[1] Article IV, section 1, of the Oregon Constitution provides, in pertinent part:

"(3)(a) The people reserve to themselves the referendum power, which is to approve or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed.

"* * * * *

"(5) The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation."

[2] The OJTA is set forth in Oregon Laws 2009, chapter 865, and the provisions relating to the moratorium are codified as a note at ORS chapter 319 immediately preceding ORS 319.950.

"SECTION 25. (1)  A city, county or other local government may not enact any charter provision, ordinance, resolution or other provision taxing fuel for motor vehicles.

"(2)  A city, county or other local government may not amend any charter provision, ordinance, resolution or other provision taxing fuel for motor vehicles.

"SECTION 26.  Section 25 of this 2009 Act is repealed on January 2, 2014.

"* * * * *

"SECTION 69.  Section 25(1) of this 2009 Act does not apply to ordinances imposing a tax on fuel for motor vehicles enacted on or before the effective date of this 2009 Act."

The OJTA became effective on September 28, 2009. Or Laws 2009, ch 865.

On March 9, 2010, at a special election, the Sisters voters approved Ordinance No. 388. Thus, the City Council adopted Ordinance No. 388 before the moratorium created by the OJTA took effect, but the voters approved the ordinance after the moratorium took effect.

Plaintiffs brought this action for declaratory and injunctive relief in circuit court, seeking a declaration that Ordinance No. 388 is void and unenforceable because it was enacted during the moratorium—that is, when the people approved the ordinance on March 9, 2010. Both parties moved for summary judgment. Plaintiffs argued that, for the purposes of an ordinance subjected to a citizen referendum, the enactment date is the date when the people approve the ordinance, and not when the legislative body originally adopts it. Defendant argued that a city ordinance is enacted when the city council approves it and that the only effect of a subsequent citizen referendum is to delay the effective date of the ordinance. The trial court agreed with defendant, denied plaintiffs' motion for summary judgment, granted defendant's cross-motion, and entered judgment for defendant. Plaintiffs appeal, and the parties reiterate the positions they took before the trial court.

On appeal from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, then both rulings are subject to review. *Bergeron v. Aero Sales, Inc.*, 205 Or App 257, 261, 134

P3d 964 (2006). When there are no issues of material fact, we review the trial court's summary judgment ruling on both motions to determine whether either party is entitled to judgment as a matter of law. *Id.* Here, the material facts are undisputed, and the decisive question is one of statutory construction—that is, what is the meaning of the word "enact" as used in section 25 of the OJTA? More specifically, when there is a subsequent citizen referendum, is the ordinance "enacted" when it is adopted by the city council or when the people approve the ordinance by a vote? We resolve that question by examining the text of the statute in context, along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In the absence of a statutory definition, we give statutory terms their "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

Before we delve into the interpretation of the OJTA, we pause briefly to provide a short overview of the citizen referendum process lying at the center of this dispute. Article IV, section 1, of the Oregon Constitution provides:

"(3)(a)   The people reserve to themselves the referendum power, which is to approve or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed.

"* * * * *

"(5)   The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district * * *."

There are two types of referenda: the citizen referendum and the legislative referendum. The citizen referendum allows the people, after they gather the required number of signatures, to approve or reject legislation that was previously passed by a legislative body.[3] The legislative referendum is

---

[3] *See* Or Const, Art IV, § 1(3)(b) ("A referendum on an Act or part thereof may be ordered by a petition signed by a number of qualified voters equal to four percent of the total number of votes cast for all candidates for Governor at the election at

the process by which the legislature is required to refer certain measures to the voters for their approval.[4]

With those principles in mind, we turn to the meaning of section 25 of the OJTA. Recall that subsection (1) provides that "[a] city, county or other local government may not *enact* any charter provision, ordinance, resolution or other provision taxing fuel for motor vehicles" (emphasis added), presenting us with the issue of when Ordinance No. 388 was "enact[ed]." Because the OJTA does not define the term "enact," we begin with the term's plain and ordinary meaning. "Enact" is defined as "to establish by legal and authoritative act : make into a law; *esp* : to perform the last act of legislation upon (a bill) that gives the validity of law[.]" *Webster's Third New Int'l Dictionary* 745 (unabridged ed 2002). That definition alone, unfortunately, begs the question before us—that is, whether the legislature considered the "last act of legislation upon (a bill) that gives the validity of law" to be the city council's act of adopting the ordinance or the people's act of approving the ordinance by a subsequent referendum vote.

The statute's context—which we always consider when examining the text—includes, among other things, other provisions of the same statute. *Hale v. Klemp*, 220 Or App 27, 32, 184 P3d 1185 (2008). Here, section 27, which will supersede section 25 in 2014 when the moratorium created by section 25 ends,[5] provides:

"A city, county or other local government *may enact* or amend any charter provision, ordinance, resolution or other provision taxing fuel for motor vehicles *after submitting the proposed tax to the electors of the local government for their approval.*"

---

which a Governor was elected for a term of four years next preceding the filing of the petition. A referendum petition shall be filed not more than 90 days after the end of the session at which the Act is passed.").

[4] *See* Or Const, Art IV, § 1(3)(c) ("A referendum on an Act may be ordered by the Legislative Assembly by law * * *.").

[5] *See* Or Laws 2009, ch 865, § 26 ("Section 25 of this 2009 Act is repealed on Janaury 2, 2014."); Or Laws 2009, ch 865, § 28 ("Section 27 of this 2009 Act becomes operative January 2, 2014.").

(Emphasis added.) When section 27 becomes effective in 2014, a local legislative body will be required to refer a proposed local fuel tax to the people for their approval in order to implement such a tax. In doing so, section 27 restricts when enactment may occur—that is, it may occur only after approval by the people in a legislative referendum. However, no such requirement of a legislative referendum applied before the OJTA was enacted in 2009, and the requirement of a legislative referendum does not become effective until 2014. Accordingly, section 27 does not answer the question of when enactment occurred for ordinances passed before 2014.

The context of section 25 also includes the constitutional framework within which the OJTA was enacted because Article IV, section 1, addresses the enactment process when a referendum is involved. *See Fresk v. Kraemer*, 337 Or 513, 520-21, 99 P3d 282 (2004) ("Statutory context includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the statute was enacted."). Article IV, section 1, of the Oregon Constitution provides, in pertinent part:

"(2)(a)   The people reserve to themselves the *initiative* power, which is to propose laws and amendments to the Constitution and *enact* or reject them at an election independently of the Legislative Assembly.

"(3)(a)   The people reserve to themselves the *referendum* power, which is to *approve* or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed."

(Emphasis added.) The text provides, as defendant contends, a clear distinction between an initiative and referendum—that an initiative empowers the people to "*enact* or reject" a proposed law and a referendum provides the ability to "*approve* or reject" an act, or a part of an act of the Legislative Assembly.

Plaintiffs disregard that distinction and argue that defendant's position is not consistent with prior interpretations of the pertinent constitutional provisions. They rely on the Supreme Court's statements in *Boytano v. Fritz*, 321 Or

498, 901 P2d 835 (1995), and *Portland Pendleton Trans. Co. v. Heltzel*, 197 Or 644, 255 P2d 124 (1953), that, "[w]hen a referendum is invoked, the act of the legislature then becomes merely a measure to be voted on by the people, and, if the people vote in the affirmative, the measure becomes an act; if they vote in the negative, the measure fails," *Hetzel*, 197 Or at 647, and "voting precedes enactment and is necessary to it," *Boytano*, 321 Or at 506. Thus, plaintiffs contend, in order for a law subjected to a citizen referendum to be "enacted," it must first be voted on and approved by the people. Plaintiffs contend that we must read the word "enact" in section 25 of the OJTA consistently with that understanding.

Defendant cites other case law in support of its view that referral to the voters via a citizen referendum does not affect a law's enactment date. Defendant relies on the Supreme Court's explanation in *Bernstein Bros. v. Dept. of Rev.*, 294 Or 614, 619, 661 P2d 537 (1983), that the referendum power

> "was created to benefit the majority of the people by suspending operation of a statute until the people have an opportunity to approve or reject legislation. *See*, Barnett, *Initiative, Referendum and Recall in Oregon*, 5 (1915). However, this power can be effective only if someone goes to the effort and expense of invoking a referendum."

According to defendant, the Supreme Court has made clear that a citizen referendum does not "re-enact" the underlying legislation, but simply delays its effective date pending approval by the people following the referendum order.

The cases on which the parties rely can be reconciled by recognizing the specific issues that were before the court in each instance. In *Heltzel*, the court stated that, when a referendum is invoked, "the act of the legislature then becomes merely a measure to be voted on by the people[.]" 197 Or at 647. In making that statement, the *Heltzel* court considered Article IV, section 1, which, at that time, provided in part, "Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise." *Id.* Plaintiffs argue that, although Article IV, section 1, has been amended since *Heltzel*, the amendments do not affect the present analysis

because the "shall take effect and become the law" language is generally provided by subsection (4)(d).[6] We disagree. The specific language—"shall take effect and become the law"—that the *Heltzel* court considered is no longer included in Article IV, section 1. Further, the issue before the *Heltzel* court concerned the effective date of the disputed act, not the enactment date. *Boytano*, on which plaintiffs also relies, involved an initiative and thus does not bear on our understanding of "enactment" in the context of a referendum.

On the other hand, the case on which defendant relies involved a citizen referendum, and the pertinent constitutional provisions were analyzed in that context. As the court in *Bernstein* recognized, the referendum power "was created to benefit the majority of the people by suspending operation of a statute until the people have an opportunity to approve or reject legislation." 294 Or at 619. That case supports the view that an ordinance is enacted when approved by the governing body and not when subsequently approved by a citizen referendum.

Finally, our review of the legislative history of the OJTA has not revealed any indication that the legislature intended a meaning for "enact" as used in section 25 different from its usual meaning in the context of a referendum.

Accordingly, we conclude that, for the purposes of section 25 of the OJTA, the legislature intended that an ordinance that is subsequently referred to the people by a citizen referendum is enacted when it is adopted by the governing body, here the city council, and not when it is subsequently approved by the people. Therefore Ordinance No. 388 was enacted when the City of Sisters adopted it on August 13, 2009.

Affirmed.

---

[6] *See* Or Const, Art IV, § 1(4)(d) ("* * *[A]n initiative or referendum measure becomes effective 30 days after the day on which it is enacted or approved by a majority of the votes cast thereon. A referendum ordered by petition on a part of an Act does not delay the remainder of the Act from becoming effective.").