Roger TILBURY et al

*v.*

MULTNOMAH COUNTY;
The City of Portland;
The Portland Development Commission;
Wasco County; The City of The Dalles;
Columbia Gateway Urban Renewal Agency;
Marion County; The City of Salem;
Salem Urban Development Division;
Clackamas County; Clackamas County
Urban Renewal Agency;
Washington County; The City of Tualatin;
Tualatin Development Commission

(TC 3368)

Roger Tilbury and Roch Steinbach, Portland, represented plaintiffs-petitioners.

Sandra Duffy, Assistant County Counsel, Portland; Bernard L. Smith, Wasco County Counsel, The Dalles; David D. DeMartino, City Attorney, Salem; Mark Pilliod, City Attorney, Tualatin; Gene E. Parker, City Attorney, The Dalles; Jeannette M. Launer, Legal Counsel, Portland; Harry M. Auerbach, Deputy City Attorney, Portland; Robert Cannon, Marion County Legal Counsel, Salem; Michael E. Judd, Clackamas County Counsel, Oregon City; and George D. McDowell, Assistant County Counsel, Hillsboro, represented defendants-respondents.

Decision for respondents rendered October 18, 1994.

**CARL N. BYERS, Judge.**

Petitioners seek refunds of 1991-92 urban renewal property taxes collected in excess of the limits of Article XI, section 11b, of the Oregon Constitution.[1] This appeal is brought under ORS 305.583, which is the exclusive remedy for taxpayers to obtain a determination of the effect of section 11b on any tax, fee, assessment or charge. *Smith v. Multnomah County Board of Commissioners*, 318 Or 302, 865 P2d 356 (1994). The matter is before the court on cross motions for summary judgment.

Petitioners, who number in excess of 200, are residents of, or own taxable real property in, the respondent cities of Portland, Salem, Oregon City, The Dalles and Tualatin.

---

[1] *City of Portland v. Smith*, 314 Or 178, 838 P2d 568 (1992), held that urban renewal bonded indebtedness was not specifically authorized by the Oregon Constitution (Article IX, section 1c) and, therefore, urban renewal taxes were not exempt from the limits of section 11b.

Respondent City of Salem has filed two supplemental motions for partial summary judgment. Those motions assert that petitioners Richard H. Fabrycki, Janice E. Fabrycki, and Dale Denson did not pay urban renewal taxes in Salem and, therefore, the City of Salem should be removed from this litigation. Petitioners concede the Fabryckis have no standing as to the City of Salem, but assert they are interested taxpayers as to Portland and Oregon City. Petitioner Dale Denson continues to maintain he owns property in the City of Salem. The court finds that Dale Denson's statements of interest fall short of establishing his right to a refund if granted. Therefore, respondent City of Salem's Motions for Partial Summary Judgment will be granted.

## SECTION 11b APPEALS

Article XI, section 11b, of the Oregon Constitution was added by an initiative adopted at the November 1990 general election. In response to that initiative, the legislature acted to implement and adapt the new limitation to the state's tax system. Part of the implementing legislation was ORS 305.580 through ORS 305.591. These provisions constitute the procedures for determining the effect of section 11b on taxes, fees, charges and assessments of units of government. One process allows units of local government to obtain a determination. ORS 305.589 and ORS 305.585. A separate process allows taxpayers to obtain a determination and refunds. ORS 305.583 and ORS 305.587. The legislature expressly provided that these processes are the "exclusive remedy" for determining the effect of section 11b.

## TAXPAYER APPEALS

ORS 305.583(1) provides:

> "Ten or more interested taxpayers may petition the Oregon Tax Court to determine the effect of the limits of section 11b, Article XI of the Oregon Constitution on any tax, fee, charge or assessment imposed by a unit of government. For purposes of this section, 'interested taxpayers' means persons who are subject to the tax, fee, charge or assessment in question."

ORS 305.583(2) specifies that the petition shall be filed in the Oregon Tax Court, naming the government unit that imposes the tax, fee, or charge as the respondent. It also

specifies both the method for service and the contents of the petition.

ORS 305.583(3) imposes time limits for filing the petition:

"In the case of any tax, fee, charge or assessment for any purpose that was imposed under an ordinance or resolution adopted by a local government unit before September 29, 1991, or in the case of any tax levied to pay principal or interest on bonded indebtedness approved by the governing body of a local government unit before September 29, 1991, the petition shall be filed within 60 days after the date the governing body of the local government unit adopts an ordinance or resolution classifying its taxes, fees, charges or assessments as subject to or not subject to the limits of section 11b, Article XI of the Oregon Constitution; or, if the governing body does not adopt a classifying ordinance or resolution, within 60 days after the later of:

"(a) The last date, but no later than November 15, that the tax statements were mailed for the tax year in which the tax, fee, charge or assessment was imposed; or

"The date of imposition of the tax, fee, charge or assessment on any one of the petitioners that first occurs after September 29, 1991."

Petitioners filed their petition on January 5, 1993. The petition seeks refunds for property taxes paid for the 1991-92 tax year. Petitioners admit that the 60-day period for filing the petition expired December 25, 1991, "at the latest." Consequently, petitioners must overcome this obstacle to maintain their appeal.

## REQUIREMENT OF "TEN" TAXPAYERS UNCONSTITUTIONAL

Petitioners attack the 60-day time limit on several grounds. First, they argue it is not severable from the requirement that the petition be filed by "ten interested taxpayers." ORS 305.583(1). Because this court held the "ten" requirement unconstitutional in *Welch v. Unified Sewerage Agency*, 12 OTR 359 (1992), petitioners reason that the 60-day filing period limitation must also be held unconstitutional. In opposition, respondents contend the court erred in *Welch* and ask the court to reconsider the issue.

In *Welch*, the court held that the "ten" requirement violated both Article I, section 10, of the Oregon Constitution, and the Due Process Clause of the United States Constitution. Subsequently, in *Ester v. City of Monmouth*, (No. 3528, Slip Op June 9, 1994), appeal pending, the court reversed itself with regard to Article I, section 10, of the Oregon Constitution. However, *Ester* affirmed that the requirement of ten interested taxpayers violated the Due Process Clause of the Fourteenth Amendment. The court now reconsiders its decision in *Welch* and in *Ester*.

## DUE PROCESS REQUIRED

As stated in *McKesson v. Division of Alc. Bev.*, 496 US 18, 35-36, 110 S Ct 2238, 110 L Ed 2d 17 (1990):

> "Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause."

■■    The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner. The state may provide a hearing before the taxpayer is deprived of any significant property interest but it is not required. *Cleveland Bd. of Educ. v. Loudermill*, 470 US 532, 542, 105 S Ct 1487, 84 L Ed 2d 494 (1985). A state may impose and collect a tax before the taxpayer is given an opportunity for a hearing. However, if the hearing is not provided until after the deprivation, then the state "must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a 'clear and certain remedy.' " *McKesson*, 496 US at 38.

## ADEQUATE DUE PROCESS

The question here is not whether the process afforded by ORS 305.583 is predeprivation or postdeprivation, but whether it is adequate. In *Mathews v. Eldridge*, 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976), the United States Supreme Court set forth three factors which a court should consider in determining whether procedures are adequate under the Due Process Clause. Those factors were: (1) The private interest that will be affected, (2) the risk of an erroneous deprivation

through the procedures used and the value of additional safeguards that might be employed, and (3) the government's interest, including the functions involved and fiscal or administrative burdens that any other procedures would entail. 424 US at 335.

Consideration of the *Mathews* factors helps illustrate the problem at hand. The private interest affected is the taking of property through taxation. The statutory requirement that a taxpayer associate with nine other interested taxpayers in order to file a petition imposes a heavy burden upon the individual. The individual taxpayer must incur expense and delay in locating and recruiting other petitioners. To protect his own standing, he must investigate and determine that the nine others qualify as interested taxpayers. The burden is on the taxpayer to persuade others to engage in litigation. If a taxpayer is successful in associating nine others, they then must agree upon representation and the sharing of litigation expenses.

■ The statutory requirement of associating with nine other taxpayers may cause an individual taxpayer to lose the very rights guaranteed by the Due Process Clause. That is, the taxpayer may lose control of the case and not be able to introduce relevant evidence or be able to cross-examine witnesses. An individual taxpayer may be bound by the admissions or concessions of other taxpayers in the group. Further, an individual taxpayer's efforts may be hampered by disagreements, miscommunications or misunderstandings. In short, the requirement of ten interested taxpayers provides a group remedy, not an individual remedy.

The second factor, the risk of an erroneous deprivation, is increased by the requirement of associating with at least nine other interested taxpayers. As the petitioners in this case point out, the statute provides a relatively short time within which to file a petition. The time spent in locating and obtaining the cooperation of nine other interested taxpayers may cause an individual taxpayer to fail to comply with the time limitations. The risk of erroneous deprivation is also increased to the extent that litigation is discouraged. Litigation will be discouraged, not only by the delay, but by the possibility of increased expenses. An individual taxpayer may have to assume personal liability for the expenses of the

litigation because others of the group do not have the resources or are unwilling to expend the resources.

In considering the third factor, the government's interest requiring ten or more interested taxpayers may reduce the number of petitions. The requirement may also reduce administrative costs. However, all petitions are filed in the same court. For purposes of judicial economy, the court could consolidate similar cases for hearing and decision. Consequently, it is doubtful that any significant benefits will be realized from requiring taxpayers to associate together in a single petition. On the other hand, eliminating the requirement increases individual protection without materially increasing the burden on government.

In summary, consideration of the three factors set out in *Mathews* persuades the court that a group remedy does not provide adequate process by which a taxpayer may protect his or her property from unconstitutional taxation.

## DUE PROCESS IS AN INDIVIDUAL RIGHT

The Fourteenth Amendment of the United States Constitution states:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law, * * *."

The term "person" suggests an individual, not a group. This court has found no holding of the United States Supreme Court interpreting this clause to indicate this is other than an individual right.

Respondents point out that similar appeal procedures requiring groups of taxpayers are found in Local Budget Laws (ORS 294.485) and timber valuation statutes (ORS 321.352(5)). The Local Budget Law requirement has not been challenged on constitutional grounds. The requirement in the timber valuation statute was challenged in *Mt. Sexton Properties v. Dept. of Rev.*, 10 OTR 467 (1987), *aff'd* 306 Or 465, 760 P2d 1320 (1988). However, as noted by both this court and the Oregon Supreme Court, that group remedy was not the exclusive remedy. The Supreme Court stated:

"The dispute in the present case arises not out of the determination of individual rights through litigation, but instead arises as a challenge to an administrative rulemaking proceeding.

"* * * * *

"At that point, where plaintiffs as individuals have their rights finally established, the due process notice requirements increase, until, if litigation over plaintiffs' individual rights occurs, plaintiffs would be entitled to the fullest due process notice." 306 Or at 479-80.

ORS 305.583 provides the exclusive remedy for a taxpayer to contest an exaction which is illegal under section 11b of the Oregon Constitution. Because it is the only remedy, due process demands that it be available to an individual. Accordingly, the court holds that the "ten" of ORS 305.583(1) is a condition which violates the Due Process Clause of the United States Constitution and must be deemed void.

## NOTICE OF NEW LAWS

Petitioners contend they were given inadequate notice of the 60-day time limit for filing the petition.[2] As indicated, section 11b was adopted at the general election held in November 1990. The following January, the legislature convened and began working on implementing legislation. The legislature adopted Or Laws 1991, ch 459, on June 30, 1991, and it became effective on September 29, 1991, 90 days after the adjournment of the legislature. The law was expressly made applicable to tax years beginning on and after July 1, 1991. Or Laws 1991, ch 459, § 452.

Petitioners argue that the 60 days expired before they had a reasonable opportunity to learn of the requirement.

■ Article IV, section 28, of the Oregon Constitution, provides that:

"No act shall take effect, until ninety days from the end of the session at which the same shall have been passed, * * *."

The purpose of such delay is to allow the public an opportunity to learn of the law and to comply with it.[3]

---

[2] Petitioners also appear to believe that, because they accepted the statute at face value, they were not required to timely challenge its validity. This is contrary to the fundamental principles by which laws are examined by the courts.

[3] The practice varies from state to state. In some states, laws become

"If no other date beyond the 90-day constitutional provision is written into the act, then the constitutional provision governs to all intents and purposes as though expressly stated in the act itself." *Portland Pendleton Trans. Co. v. Heltzel,* 197 Or 644, 654, 255 P2d 124 (1953).

■ Once a law becomes effective, citizens are required to comply with it. This implies an obligation to be aware of what laws are enacted.

It is undisputed that legislative proceedings are public and the 1991 Legislative Advance Sheets were published in July and August. The 60-day period did not begin until the tax statements were mailed on or about October 25, 1991.

## TAX STATEMENTS

Petitioners claim the tax statements were inadequate notice that the urban renewal taxes were outside the limits of section 11b. Petitioners believe they were entitled to an express notice characterizing the tax and telling them what they must do to contest that characterization. The tax statements, as published, complied with the statutory requirements. It is noteworthy that petitioners did not file their petition until after the Oregon Supreme Court held that urban renewal taxes were subject to the limits of section 11b. *City of Portland v. Smith,* 314 Or 178, 838 P2d 568 (1992).

Petitioners make a number of other claims and arguments. Most of those arguments pertain to policies and are best addressed to the legislature itself. Determining that the 60-day filing period is a valid requirement and that petitioners failed to comply with that requirement is dispositive of this case. Now, therefore,

IT IS ORDERED that petitioners' Motion for Partial Summary Judgment is denied, and

IT IS FURTHER ORDERED that respondent City of Salem's Supplemental Motions for Partial Summary Judgment are granted, and

IT IS FURTHER ORDERED that respondents' Motions for Summary Judgment are granted. Costs to neither party.

---

effective immediately upon passage and in others they do not become effective until they have been published and distributed. Sutherlin, 2 *Statutory Construction,* § 33.06.