IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

MICHAEL R. MENDOZA,          )
                                     )
          Plaintiff,          )    TC-MD 150516C
                                     )
     v.                   )
                                     )
DEPARTMENT OF REVENUE,     )
State of Oregon,                )
                                   )
          Defendant.    )    **FINAL DECISION**

Magistrate Dan Robinson wrote and signed the Decision in this matter, entered

August 19, 2016. This Final Decision incorporates the court's Decision without change. The

court did not receive a statement of costs and disbursements within 14 days after its Decision

was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

Plaintiff appeals Defendant's Notices of Deficiency Assessment for 2010 and 2012, and

Notices of Refund Denial for 2011 dated September 22, 2015, and September 16, 2015, for the

2012 tax year. A trial was held in the Tanner Mediation Center on June 15, 2016, in Salem,

Oregon. Plaintiff was represented by BreAnna Mendoza (Mendoza), CPA and Plaintiff's

spouse, and at trial Plaintiff testified on his own behalf. Fadi Abouadas (Abouadas ) appeared

and testified on behalf of Defendant. Plaintiff's Exhibits 2 through 4, 6, 7, 11 through 17, 21, 23,

29, 32, 34, 37, 42, and 47 at 2, were admitted without objection. Defendant's Exhibits A-3

through A-5 and B-1 through B-7 were admitted without objection.

## I.  STATEMENT OF FACTS

A.    *Plaintiff's Work in Oregon and Washington*

Plaintiff lives in Washington and works in Washington and Oregon. He is a law

enforcement officer for the Columbia River Inter-Tribal Fisheries Enforcement, which is a part

of the Columbia River Inter-Tribal Fish Commission (CRITFC). (Ptf's Ex 45 at 1; Def's Ex A3.) According to Plaintiff's exhibits and sworn testimony, he and seven or eight other officers conduct land and water patrols along an approximately 150-mile stretch of the Columbia River between the Bonneville and McNary dams. (Ptf's Exs 11-13.) Plaintiff testified that he began his current job on September 15, 1994. Plaintiff's job involves patrolling 30 federally protected Indian fishery sites located along the banks of the Columbia River, 20 of which are in Washington and 10 in Oregon. (*Id.*) According to a letter written by Plaintiff's supervisor Captain Jerry Ekker, the 30 sites "are federal land set aside for enrolled tribal members to exercise their tribal treaty rights and is [sic] managed by the Bureau of Indian Affairs (BIA)." (Ptf's Ex 45 at 1; Def's Ex A3.) Plaintiff's job is governed by a contract between the BIA and Plaintiff's employer. (Ptf's Ex 2.) "The Director of the Office of Law Enforcement Services for the Bureau of Indian Affairs (Director) has been delegated the responsibility for the development of law enforcement and detention policies, standards, and management of all Bureau of Indian Affairs (BIA) criminal investigations, drug enforcement, training, internal affairs, [etc.]" (*Id.* at 1.) The Director is responsible for "prescrib[ing] the types of data to be collected and the reporting format to be used to collect information and assemble reports on crime reported in Indian country." (*Id.* at 5-6.) Plaintiff submitted reports for 2010 and 2012 that the court understands were prepared in accordance with the guidelines established by the BIA. (Ptf's Ex 42 at 5, 13.) Those reports reflect Plaintiff's duties, which include total hours worked, vehicle patrol hours, boat patrol hours, surveillance, investigation, search and rescue, office administration, meetings, training, travel, etc. (*Id.*) Plaintiff spent some time during trial testifying about the various aspects of most of those duty categories.

/ / /

The fishing sites that Plaintiff patrols along the Columbia River are "set aside for the exclusive use of fishers from the four member tribes." (Ptf's Ex 11.) According to Plaintiff's testimony and an exhibit he submitted into evidence at trial, Plaintiff is "directly responsible for carrying out all enforcement and protective patrols by foot, vehicle and boat on the main stem Columbia River (Oregon and Washington shores) and its environs." (Ptf's Ex 32 at 1.) "Patrols are dictated by Commission policy, Tribal policy, the contractual obligations of the Fisheries Enforcement Department and, at the direction of patrol supervisors." (*Id*.)

The parties disagree on the amount of time Plaintiff spent in the boat on the water. Abouadas testified that Defendant estimated Plaintiff spends 2.5 percent of his time on the water. That estimation was apparently based on information Defendant received from Plaintiff's supervisor Captain Ekker, but which Abouadas testified were, in the end, estimates or approximations because precise data was not available. (*See, e.g.*, Ptf's Compl at 13, 32.)[1] Plaintiff testified that he spent 6.7 percent of his time on "boat patrols" in 2010, 5.2 percent in 2011, and 4.3 percent in 2012. Plaintiff testified that he used the boat to patrol certain protected fishing areas that were only accessible by boat, and that the boat was used for search and rescue operations if there was a report that a tribal member was lost or had fallen into the river. Plaintiff further testified that if an arrest was made because of the violation of law, Plaintiff would use the boat to transport the individual arrested to the tribal jail on their reservation. The tribal jail could be many miles from the point of arrest, depending on the tribe and point of arrest. It was not clear from the testimony whether the individual arrested would be transported solely by boat, or by boat and vehicle. Plaintiff's figures regarding his time on boat patrol come from reports compiled by his employer for 2010 and 2012. (Ptf's Ex 42 at 5, 13.) The reports appear to

---

[1] Those documents are pages from Defendant's deficiency notices for 2010 and 2012.

corroborate Plaintiff's testimony. Those figures are important for determining the amount of Plaintiff's wages exempt from taxation by Oregon, as explained below.

Plaintiff's employer has an administrative office in Hood River, Oregon. Plaintiff testified that the Hood River office was a call center and dispatch office and that he has no regularly assigned duties in that office. Plaintiff further testified that he spends as little time as possible at the office in Hood River because his primary job is law enforcement and his job does not require him to go into the office in Hood River very often. Plaintiff further testified that he does his "administrative" work either from his home or in his employer-provided truck. Based on information Defendant received from Plaintiff's supervisor Captain Ekker for calendar year 2013, Defendant estimated that, for the years at issue, Plaintiff spent 30 percent of his time on "office administration" duties, which Defendant determined were performed at the Hood River administrative office. (Trial Test.; Ptf's Compl at 13-14.)[2] Plaintiff submitted activity summary reports presumably prepared by his employer for 2010 and 2012 that indicate Plaintiff performed office administrative duties 36.3 percent of his time in 2012 and 28.9 percent in 2010. (Ptf's Ex 42 at 5, 13.) The reports do not indicate where those duties were performed.

Plaintiff offered very little testimony as to the amount of time he spent working in Oregon and Washington. On redirect, Plaintiff testified that his travel between the two states varies and it is difficult to give an exact answer because each day is different. Plaintiff further testified that his time in each state depends on the work he is doing on any given day – investigation, surveillance, detailed calls, etc. Plaintiff testified that while on patrol, he is always "at call" regarding any fishing issues; that some days he has spent 100 percent of his time in

---

[2] That determination was made for the 2012 tax year during Defendant's audit process, as explained in Defendant's October 15, 2014, Notice of Deficiency (Deficiency). (Ptf's Compl at 11- 14.) Plaintiff apparently filed a written objection to that Deficiency, and Defendant's representative in this appeal denied Plaintiff's objection in its September 22, 2015, Notice of Deficiency Assessment. (Ptf's Compl at 8.)

Washington and on some days he has "crossed over from Washington to Oregon" as many as 15 times (by vehicle). Contemporaneously tracking his movements between the two states and logging the amount of time spent in each, Plaintiff testified, would compromise his officer safety. Plaintiff testified that, although he never works exclusively in Oregon, he does work in Oregon because he has fishery and staff meetings in this state, human resource trainings, patrols at protected fishing sites, and calls in Oregon. The meetings and trainings are at the administrative office in Hood River. When asked on redirect by his representative Mendoza whether Plaintiff "would be surprised to know that for the three years in question the total hours for meetings and training was fewer than 400 hours," Plaintiff responded that he thought that number might be a little high. On a percentage basis, according to Mendoza, that comes to an average of 7.5 percent per year.

As indicated above, Plaintiff did not specifically track his hours in each state, and Plaintiff testified that his employer did not maintain records such as a log book detailing where Plaintiff worked each day. A letter written to Defendant by Plaintiff's supervisor Captain Ekker states:

> "[a]n Enforcement Officer's duties are assigned randomly, depending on the time of year and the level of activity at any given location. An Officer may be required to travel back and forth from Washington to Oregon multiple times a day. Duties are assigned based on a number of factors, which include[] the availability and response time of the Officer at a given moment.
>
> "* * * * *
>
> "Due to the nature of the calls and the inability of any law enforcement agency to predict to the number of hours an officer will be needed at any specific location[,] [i]t is not practical or cost effective to maintain a 'location' log nor track the length of time an officer is exclusively in the state of Oregon as compared to the length of time an officer is in [the] state of Washington * * *."

(Ptf's Ex 45 at 1, 2.)

Plaintiff testified at length about the various duties he performed as a law enforcement officer, and that his "office" was his work vehicle that he took home after work. Plaintiff testified that his truck was equipped with a radio, a computer, a citation booklet, etc., and that he did his administrative work from that vehicle. Plaintiff further testified that he wrote his case reports at home and prepared his timesheets either in his vehicle or at home.

To summarize, Defendant determined, as an approximation, that Plaintiff spent 30 percent of his time performing administrative duties at the Hood River office in Oregon, and the other 70 percent of his time performing other law enforcement duties in Oregon and Washington. Abouadas testified that Defendant used the number of protected fishing sites Plaintiff patrolled on the Oregon side of the Columbia River and the number of sites on the Washington side of the river to estimate the amount of time Plaintiff spent on his nonadministrative officer duties. According to Abouadas's testimony, and information in a letter written by Captain Ekker dated March 20, 2014, 30 percent of the fishing sites are located in Oregon and 70 percent in Washington. (Def's Ex A3.) A map each party submitted substantiates those numbers. (Ptf's Ex 13; Def's Ex A5.) Multiplying the 70 percent nonadministrative law enforcement duties by 30 percent (the percentage of fishing sites in Oregon), Defendant determined Plaintiff spent 21 percent of his time in Oregon on nonadministrative law enforcement activities. Defendant reduced Plaintiff's 30 percent administrative duties by 2.5 percent, which represents Defendant's determination of Plaintiff's boat patrol hours, which are exempt from taxation under state and federal law. During its audit, Defendant concluded that "[u]nder both federal and state law, compensation of a nonresident waterway worker is exempt from Oregon taxation to the extent the compensation is paid for services performed while on a 'vessel operating on navigable waters in 2 or more states.' " (Ptf's Compl at 13, 23, and 32.) Defendant cited 46 USC 11108,

ORS 316.127, and OAR 150-316.127 (10). (*Id*.) Thus, Defendant determined Plaintiff had 27.5 percent taxable Oregon-source income from administrative duties. Abouadas relied on those same authorities and figures at trial. Adding the two figures (21 percent other duties in Oregon and 27.5 percent administrative duties in Oregon), Defendant concluded 48.5 percent of Plaintiff's income was sourced to Oregon and subject to tax by this state for each of the three years at issue.

During the audit of at least one year at issue, the exemption provided in ORS 316.777 for income of qualified American Indians living and working in federally recognized Indian country in Oregon was addressed. It was also discussed briefly at trial. Plaintiff acknowledged during trial that although his parents were enrolled members of two different Indian tribes, he was not an enrolled member of any American Indian tribe and that he was "three fourths Indian and one fourth Mexican." Thus, the exemption provided in ORS 316.777 is not applicable, a point Plaintiff emphasized at trial.

B.    *2012 Refunds*

Plaintiff's original 2012 Oregon Form 40N nonresident return reported a refund of $2,460. (Def's Ex B5.) That return requested that the refund be deposited directly into Plaintiff's bank account. (*Id*.) The routing number and bank account number for the checking account where the refund was to be deposited were included on that return as well. (*Id*.) Defendant submitted information from its internal records showing that on or about February 8, 2013, $2,460 was deposited into an account with that number at Riverview Community Bank. (Def's Ex B2.) Plaintiff acknowledged during trial that he had a bank account with that institution. Plaintiff subsequently filed an amended 2012 nonresident return received by Defendant on February 13, 2014. (Def's Ex B6.) That amended return removed all wages from

the Oregon column (line 8), and reported a net refund of $4,006. (Def's Ex B6-B7.) The amended return requested that the refund be directly deposited into a different checking account. (Def's Ex B7.) Information from Defendant's internal records show a deposit in the amount of $1,595.10 on March 17, 2014, into the account number shown on the amended return; the financial institution was Capital One. (Def's Ex B3.) Plaintiff acknowledged during trial that he had an account with that bank as well. Plaintiff testified that he had no knowledge of receiving any refunds for 2012, and received no notices of refunds from Defendant. Plaintiff testified that he received one small check for a little over $100, but he never cashed it because he received a letter from Defendant saying the check was issued in error. Plaintiff testified that he returned that check to Defendant. No official Department of Revenue notices regarding the two alleged direct deposit refunds were offered into evidence; nor was the letter Plaintiff testified about regarding the erroneously issued check. Plaintiff did not submit bank statements for the months and bank accounts into which Defendant alleges refunds were deposited, statements that may have corroborated his testimony that he never received those refunds.

## II. ANALYSIS

A.     *Taxation of Nonresidents and Burden of Proof*

Oregon not only imposes an income tax on residents of this state, but also "on the taxable income of every full-year nonresident that is *derived from sources within this state*." ORS 316.037(1)(a), (3) (emphasis added).[3]  Under ORS 316.130(1) "[t]he taxable income for a full-year nonresident individual is adjusted gross income attributable to sources within this state determined under ORS 316.127, with the modifications * * * as otherwise provided under this chapter and other laws of this state applicable to personal income taxation * * *."

---

[3] Unless noted otherwise, the court's references to the Oregon Revised Statutes (ORS) are to 2009.

ORS 316.127(1), in turn, provides in relevant part that "[t]he adjusted gross income of a nonresident *derived from sources within this state* is the sum of * * * [t]he net amount of items of income, gain, loss and deduction entering into the nonresident's federal adjusted gross income that are derived from or connected with sources in this state * * *." (Emphasis added.)

The burden of proof in the Tax Court is a "preponderance" of the evidence, and falls upon the party seeking affirmative relief which, in this case, is Plaintiff. ORS 305.427. The Oregon Supreme Court has stated that:

> " 'Preponderance' derives from the Latin word 'praeponderare,' which translates to 'outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."

*Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citation omitted).

1.   *Water carrier exemption*

There are certain exemptions to determining the taxable income of nonresidents from sources within this state. One such exemption, applicable to this case, is found in ORS 316.127(10), and is commonly referred to as the water carrier exemption.[4] That statute provides in relevant part:

> "(10) Compensation for the performance of duties described in this subsection that is paid to a nonresident does not constitute income derived from sources within this state if the individual:
>
> "* * * * *

/ / /

---

[4] The parties in this case referred to the exemption as the "waterway worker" exemption.

"(b) Performs regularly assigned duties while engaged as a master, officer or member of a crew on a vessel operating on the navigable waters of more than one state."

To summarize, while ORS 316.037(3) generally provides that Oregon imposes a tax on the income of nonresidents derived from sources within this state, ORS 316.127(10)(b) provides that "[c]ompensation * * * paid to a nonresident *does not constitute income derived from sources within this state* if the individual * * * [p]erforms regularly assigned duties [working as a] master, officer or member of a crew on a vessel operating on the navigable waters of more than one state."  (Emphasis added.)

Oregon promulgated an administrative rule that provides in relevant part:  "[t]he State of Oregon imposes taxes on Oregon source income of nonresidents to the extent allowed under Oregon and federal law and exempts Oregon source income of nonresidents to the extent provided under federal law: 46 USCA 11108."  OAR 150-316.127(10).[5]  It is clear to the court that under the statute – ORS 316.127(10) – only the portion of a nonresident's compensation paid for performing regularly assigned duties as a qualifying member of a crew on a "vessel operating on navigable waters of more than one state" is considered non-Oregon source income and therefore exempt from taxation.  Example 2 in Defendant's administrative rule confirms that interpretation.  In that example,

> "Kirk, a nonresident, works for a log mill located on the Oregon shore of the Columbia River [spending] 6 hours a day piloting a tugboat on the river carrying logs to the mill.  For the remaining 2 hours of his shift, he works in the mill doing maintenance on mill equipment as well as other tasks.  Kirk's compensation for his time working on the tugboat is not subject to Oregon tax.  However, the time he spent working in the mill in Oregon is Oregon-source income and subject to Oregon's tax.  Kirk may exclude 75 percent (6 divided by 8) of his total compensation from this employer from Oregon taxation.  He will only report 25 percent of his wages in the Oregon column of his nonresident return."

---

[5] The court's references to the Oregon Administrative Rules (OAR) are to the rules in effect for the years at issue.

OAR 150-316.127(10), Example 2.

The relevant portion of the federal statute cited in Defendant's rule is in accord, and provides:

> "**(1) Limitation on jurisdiction to tax.** - - An individual to whom this section applies [a master or seaman on a vessel in the foreign, coastwise, intercoastal, interstate, or noncontiguous trade or an individual employed on a fishing vessel or any fish processing vessel] is not subject to the income tax laws of a State or political subdivision of a State, other than the State and political subdivision in which the individual resides, with respect to *compensation for the performance of duties described in paragraph (2)*.
>
> "(2) **Application. - -** This subsection applies to an individual - -
>
> "(A) * * * * *
>
> "(B) who performs regularly assigned duties while engaged as a master, officer, or crewman on a vessel operating on navigable waters in 2 or more States."

46 USCA §11108(b) (bold emphasis in original; italicized emphasis added).

Plaintiff argues that his income is entirely exempt from Oregon taxation primarily under the "waterway worker exemption," a federal statute that, according to Plaintiff, provides that more than 50 percent of the Plaintiff's income must be attributable to Oregon for Oregon to tax it; otherwise, his income is fully taxable to his state of residence, which is and was Washington. The federal statute Plaintiff refers to is 49 USC section 11504(c)(2), (3). (Ptf's Ex 23 at 1.)[6] Although that is a fair characterization of the federal statute, in terms of the "more than 50

---

[6] The statute Plaintiff referred to and included in his exhibits provides in relevant part:

> "(2) A water carrier providing transportation subject to the jurisdiction of the Commission under subchapter III of chapter 105 of this title or a water carrier or class of water carriers providing transportation on inland and or coastal waters under an exemption under this subtitle shall file income tax information returns and other reports only with –
>
> "(A) the State and subdivision of residence of the employee * * *; and
>
> "(B) the State and subdivision in which the employee earned more than 50 percent of the pay received by the employee from the carrier during the preceding calendar year."

49 USC § 11504(c).

percent of the pay received" provision in 49 USC section 11504(c)(2)(B), Plaintiff is not covered by that law. Plaintiff submitted the 1994 version of that law. (*Id*. at 1.) That statute was renumbered in 1995 pursuant to Public Law 104-88 from 49 USC § 11504 to 49 USC § 14503. (*See also note after* 49 USC § 11502 (1996). Although renumbered, the language of the two provisions is substantially the same and has remained that way through the tax years at issue.

Plaintiff is not covered under the provisions of that federal statute because it governs the state's ability to tax the income of a nonresident who is "[a] water carrier providing transportation * * *." 49 USC § 14503(2).[7] The term "water carrier" is defined under relevant federal law as "a person providing water *transportation* for compensation." 49 USC § 13102(26) (emphasis added). Subsection (23) of that statute provides that "[t]he term 'transportation' includes – (A) a motor vehicle, vessel * * * of any kind *related to the movement of passengers or property*, or both." 49 USC § 13102(23) (emphasis added). Plaintiff's law enforcement duties on his employer's boat do not involve the movement of passengers or property. At least, that is not the primary purpose for Plaintiff's presence on the boat. According to his testimony, Plaintiff used the boat to patrol certain protected fishing sites only accessible by water, to engage in search and rescue operations and the like. If Plaintiff arrested someone for violating the fishing laws, or brought the individual on board the boat during a search and rescue operation, he did "transport" that individual either to jail (in the case of an arrest) or safely to shore (in the case of a rescue operation). However, such transportation is incidental to Plaintiff's law enforcement duties on the boat.

/ / /

/ / /

---

[7] The 1994 version of the federal statute referred to by Plaintiff at trial and included in his exhibits – 49 USC § 11504(2) – had the exact same language. (Ptf's Ex 23 at 1.)

2.    *Application of the water carrier exemption to this case*

The compensation Plaintiff received for the duties he performed working on a boat on the Columbia River is exempt from taxation by Oregon. Plaintiff testified that he spent 6.7 percent of his time on "boat patrols" in 2010, 5.2 percent in 2011, and 4.3 percent in 2012. Plaintiff's figures come from reports compiled by his employer; Plaintiff submitted the reports for 2010 and 2012. (Ptf's Ex 42 at 5, 13.) The court found Plaintiff's evidence on that point to be persuasive. It is at least backed by written documents prepared by Plaintiff's employer. That is contrasted with Defendant's estimate of 2.5 percent each year, a figure Defendant acknowledged was merely an approximation. Accordingly, Plaintiff's Oregon-source income for 2010, 2011, and 2012, must be reduced by 6.7 percent, 5.2 percent, and 4.3 percent, respectively, for those three years.

B.    *Plaintiff's Oregon-Source Income for Time Spent Working in Oregon*

Defendant divided Plaintiff's work between office administration and all other duties. Based on information Defendant received from Plaintiff's employer's reports and other communications, Defendant determined that 30 percent of Plaintiff's work was attributed to office administration. Plaintiff testified persuasively that he spent very little time at the office in Hood River. On average, Plaintiff estimated that he spent approximately 7.5 percent of his time at that office each year engaged in meetings and training. He also testified that he spent some other time there doing research for his commanding officers. The court finds 10 percent to be a reasonable estimation for the amount of time Plaintiff spent at the Hood River office.

That leaves 90 percent to be attributed to the balance of Plaintiff's law enforcement duties. The evidence, both testimonial and documentary, is both vague and somewhat conflicting on that point. The court finds Defendant's approach to that category of duties the

most reasonable and persuasive. Based on the number of the fishing sites Plaintiff is responsible for patrolling in Washington and Oregon, the evidence shows that Plaintiff spent one third of his time working in Oregon. One third of 90 percent is 30 percent. The court finds that Plaintiff spent 30 percent of his time in Oregon conducting law enforcement activities unrelated to his "office" duties in Hood River at his employer's dispatch office.

Based on those two numbers, the court finds that plaintiff spent 40 percent of his time working in Oregon and that is the percentage of his income subject to taxation by this state, before factoring in the "waterway worker" exemption. The 40 percent number has to be reduced by the amount of time Plaintiff spent patrolling on the boat on the Columbia River each year; 6.7 percent for 2012, 5.2 percent for 2011, and 4.3 percent for 2010. Subtracting those percentages leaves Plaintiff with Oregon-source income subject to taxation by this state of 33.3 percent of total wages for 2012, 34.8 for 2011, and 35.7 for 2010.

C.    *Refund Issue for 2012*

Defendant asserts Plaintiff received two refunds directly deposited into two separate bank accounts totaling $4,055.10. Defendant has documentation from its internal records that tends to support that claim. Plaintiff insists he never received either refund. Plaintiff brought out on cross-examination that Defendant did not present any copies of refunds and notices issued regarding those alleged refunds. However, Plaintiff knew that the refunds were at issue prior to trial but did not submit any evidence supporting his claim that the funds were not deposited into his accounts. Copies of bank statements for those accounts for the time periods at issue would have supported Plaintiff's claim if, in fact, it is accurate. On the evidence before it, the court concludes that Defendant did issue two refunds to Plaintiff, directly deposited into two separate

/ / /

accounts: $2,460 into a checking account at Riverview Community Bank, and $1,595.10 into a Capital One checking account.

D.      *Due Process and Commerce Clause Claims*

Plaintiff alleges that Defendant's allocation of his income grossly distorts Plaintiff's income and thus violates the application of due process under the U.S. Constitution, and that Plaintiff does not have a substantial presence in Oregon under the commerce clause, and therefore is exempt from Oregon taxation.

In *Atkins v. Dept. of Rev.*, 13 OTR 65, 69 (1994), this court addressed taxpayers' due process claim, stating:

> "The requirements of due process are set out in *McKesson v. Division of Alc. Bev.,*
> 496 US 18, 110 S Ct 2238, 110 L Ed 2d 17 (1990). As explained in that case,
> because 'exaction of a tax constitutes a deprivation of property, the State must
> provide procedural safeguards against unlawful exactions in order to satisfy the
> commands of the Due Process Clause.' 496 US at 36. The procedural safeguards
> may consist of a predeprivation hearing or clear and certain, backward-looking,
> postdeprivation relief. 496 US at 37.

In *Tilbury v. Multnomah County*, 13 OTR 157, 161 (1994), this court again addressed the requirement of due process, noting that "[t]he fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." Plaintiff had an opportunity to be heard and his due process rights were therefore not violated.

Turning to Plaintiff's commerce clause claim, the US Supreme Court in *Complete Auto Transit, Inc. v. Brady,* 430 US 274, 279, 97 S Ct 1076, 51 L Ed 2d 326 (1977), set forth a four-part test which asks whether a "tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." That test is still good law. And, as applied to this case, there is no commerce clause violation. Substantial nexus exists because Plaintiff worked in Oregon. The tax is fairly apportioned because it is only imposed on Oregon-source income (*i.e.*,

on wages received for work performed in Oregon), at a rate that applies to all individuals taxed by this state. There is no discrimination against commerce because Plaintiff enters Oregon to work, and he is taxed on the money he earns here. He is no worse off than any other individual working in Oregon. Finally, in performing his duties, Plaintiff drives on Oregon's roadways and works in an office in Hood River, and while in Oregon, he receives police and fire protection, if needed, as well as other public services. The tax is therefore fairly related to the services provided by the state. In short, Plaintiff worked in Oregon and his employer's office is located in this state. Plaintiff's presence in Oregon was substantial enough to subject his Oregon-source income to taxation by this state.

### III. CONCLUSION

The court concludes that Plaintiff's Oregon-source income for 2010, 2011, and 2012 is subject to taxation by this state. The court concludes that 40 percent of Plaintiff's income was earned in Oregon each year, and that a portion of that income is exempt under ORS 316.127(10), OAR 150-316.127(10), and 46 USCA § 11108(b). Subtracting the waterway worker percentages of 6.7 for 2012, 5.2 for 2011, and 4.3 for 2010, leaves Plaintiff with Oregon-source income subject to taxation by this state of 33.3 percent of total wages for 2012, 34.8 for 2011, and 35.7 for 2010. Defendant's determination that Plaintiff was taxable at 48.5 percent is unsupported by the evidence adduced at trial.

Plaintiff is not covered by the provisions of 49 USC § 14503(2) because that federal statute governs the state's ability to tax the income of a nonresident who is "[a] water carrier providing transportation * * *," and Plaintiff was not a "water carrier" providing "transportation" because he did not move passengers or property. Accordingly, Plaintiff is not exempt from tax by Oregon based on that statute's 50 percent rule.

The court further concludes that Plaintiff failed to prove that he did not receive two refunds for the 2012 tax year totaling $4,055.10. Those refunds must be factored into the calculation of any tax or refund Plaintiff is due.

Finally, the court rejects Plaintiff's due process and commerce clause challenges for the reasons explained above. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted in part. Plaintiff had Oregon-source income subject to taxation by this state of 33.3 percent of total wages for 2012, 34.8 for 2011, and 35.7 for 2010. In addition, Plaintiff received two refunds for 2012 totaling $4,055.10. Defendant's assessments shall be adjusted accordingly, and any refunds due shall be promptly paid with applicable statutory interest.

Dated this ___ day of September 2016.


POUL F. LUNDGREN
MAGISTRATE


*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on September 14, 2016.*